IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BB&T CORPORATION,            )
                             )
          Plaintiff,         )
                             )
     v.                      )     1:04CV00941
                             )
UNITED STATES OF AMERICA,    )
                             )
          Defendant.         )

**O R D E R**

This case comes before the Court on defendant United States of America's ("United States") motion for a protective order to prevent the deposition of three of its attorneys who work in the office of the chief counsel of the Internal Revenue Service ("IRS") and are, in some fashion, assisting in the defense of this matter. Plaintiff BB&T Corporation ("BB&T") contends it needs the depositions to discover the basis for the government's denial of tax deductions taken by BB&T for rent, interest, and transactions costs in its 1997 Federal Income Tax Return. Thus, plaintiff seeks to discover defendant's factual and legal bases for its defense. This type of discovery is termed "contention discovery" and is usually conducted by serving "contention interrogatories" as opposed to taking a deposition of a party or its attorneys.

The case itself is not a simple one, but neither is it excruciatingly complex. The deductions were generated through BB&T's participation in a somewhat complicated Lease-In/Lease-Out ("LILO") transaction in Sweden. BB&T leased a plant from its owner for a period of 36 years and immediately subleased the plant back

to the Swedish owner for a period of 15.5 years. After the end of the sublease, there are a number of alternative options permitting either the buyout of BB&T's interest or an extension of the sublease. This arrangement provided BB&T with accelerated rent deductions for the first years of the 36-year primary lease, along with deduction of interest on a loan used to pay BB&T's rent payments. According to BB&T, this type of LILO was the subject of final IRS regulations issued in 1999 which make it unlikely that a taxpayer would enter into a LILO transaction thereafter.

Unfortunately for plaintiff, the IRS challenged plaintiff's deductions even though the LILO transaction was entered into prior to issuance of the final regulations. Moreover, according to BB&T, the IRS also issued conflicting revenue rulings in 1999 and 2002 with respect to these prior transactions. It wants to ascertain defendant's current litigation position for this case.[1] One of the proposed deponents is identified as the principal author of those two allegedly inconsistent revenue rulings, 99-14 and 2002-69. The defendant seeks to quash the deposition notice of its three attorneys; although, as will be explained later, it does not necessarily oppose providing the underlying information to BB&T.

The parties both agree that for ordinary discovery, protective orders totally prohibiting a deposition are rarely granted absent extraordinary circumstances, citing Medlin v. Andrew, 113 F.R.D. 650, 653 (M.D.N.C. 1987). The Federal Rules of Civil Procedure

---

[1] BB&T states that almost all corporate income tax disputes are settled through negotiations, but in this case the IRS has picked out the BB&T LILO for litigation as a test case.

-2-

favor unhampered discovery and, normally, the choice of discovery methods should be left to the parties. "Because of its nature, the deposition process provides a means to obtain more complete information and is, therefore, favored." Marker v. Union Fidelity Ins. Co., 125 F.R.D. 121, 126 (M.D.N.C. 1989). However, requests to take the deposition of a party's attorney do not fall within this general rule. N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (M.D.N.C. 1987).

The information BB&T seeks from the depositions is for the United States to identify the factual and legal bases for its denial of the 1997 tax deductions. As stated earlier, this type of request is usually made by serving contention interrogatories which are favored over contention depositions because, by their nature, contention discovery will usually require the assistance of a party's attorney. United States v. Taylor, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996). Thus, the contention deposition will likely involve the deposition of a party's attorney, which is not favored. N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83.

Plaintiff did first attempt to use contention interrogatories. Seven months earlier, BB&T served eleven interrogatories seeking contention information. It complains that the response by the United States fails to identify any relevant facts and provides only a superficial discussion of the United States' legal basis for its defense. That answer is as follows:

> The United States contends that the Transaction is not a leveraged lease transaction because the Transaction is not, in substance, a leveraged lease transaction. In this regard, the substance, not the form, of a
-3-

> transaction governs how it is to be treated for federal income tax purposes. In this case, the interrelated agreements involving plaintiff, Sodra, and the parties purporting to act as lender and payment undertakers for the Transaction create for plaintiff, at most, contingent future interest in the Equipment.
>
> Pursuant to Fed. R. Civ. P. 33(d), the facts relevant to the United States' contention can be derived from the documents listed in plaintiff's Fed. R. Civ. P. 26(a) disclosures dated May 2, 2005; and Form 886-A, Explanation of Items, produced in response to plaintiff's first request for production of documents.
>
> The legal bases supporting the United States' contention include those set forth in Revenue Ruling 2002-69, 2002-2 C.B. 760, the IRS's coordinated issue paper dated October 17, 2003 (UIL 9300.07-00) regarding losses claimed and income to be reported from Lease-In Lease-Out ("LILO") transactions, and IRS Notice 2005-13, 2005-9 I.R.B. 630.

(Pl's Br. at 7)

The Court agrees that this answer given by the United States is rather cursory. No facts are identified, but only a number of documents. As this Court found in U.S. S.E.C. v. Elfindepan, S.A., 206 F.R.D. 574, 576 (M.D.N.C. 2002): "[D]ocuments themselves rarely, if ever, reveal contentions of fact or law. A party reveals its contentions." Therefore, the answer appears deficient in that respect. As to the legal basis, the United States merely quotes the Revenue ruling, but does not explain how that ruling applies to the specific facts of this case. Therefore, the Court agrees with BB&T that the United States' answer to these contention interrogatories is rather cursory and unhelpful. Nevertheless, for a number of different reasons, the Court will grant the motion to quash the depositions.

The initial reason for granting the protective order against the depositions is that plaintiff fails to show why a motion to

compel answers to the contention interrogatories was not first pursued. Because of their intrusive, disruptive nature, contention depositions of a party's attorneys are not favored. United States v. Taylor, 166 F.R.D. at 362 (citing McCormick-Morgan, Inc. v. Teledyne Industries, Inc., 134 F.R.D. 275, 286-287 (N.D. Cal.), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991)). See N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83. Therefore, until a party has first shown that the interrogatory process cannot be used, it may not seek to use depositions for contention discovery.

Second, the deposition notices specify defendant's attorneys. BB&T recognizes that, in general, depositions of a party's attorneys have not been favored by this Court. N.F.A. Corp. v. Riverview Narrow Fabrics, Inc., 117 F.R.D. 83 (citing Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1986)). On the other hand, the stringency of that rule may not necessarily apply to the party's non-trial attorney, i.e. a former attorney or in-house counsel such as the proposed deponents in this case. Southern Film Extruders, Inc. v. Coca-Cola Co., 117 F.R.D. 559 (M.D.N.C. 1987); United States v. Phillip Morris, Inc., 209 F.R.D. 13 (D.D.C. 2002). However, a larger principle controls the decision here.

The United States correctly points out that when it comes to contention discovery, this Court generally permits the party to designate the person who will be providing answers concerning the legal or factual-legal basis for a complaint or defense. United States v. Duke Energy Corp., 208 F.R.D. 553, 558 (M.D.N.C. 2002)

-5-

Case 1:04-cv-00941-NCT   Document 30   Filed 02/02/06   Page 5 of 10

(corporate defendant allowed to provide a designee to give deposition regarding basis of defense). After all, reason and fairness require allowing the party itself to designate the person who will be making the binding answers. Because the deposition notices seek to designate the deponents for the contention discovery, the motion to quash is well-taken.

A third reason for granting the protective order concerns the element of timing. And, the timing issue implicates the much larger and more general issue of whether contention discovery should be allowed at all. Contention discovery, whether in the form of contention interrogatories or contention depositions, can be disruptive mainly because the very nature of such questions will normally require the help of an attorney to assist the client in providing answers. United States v. Taylor, 166 F.R.D. at 362 n.7. This type of discovery can add considerable expense to any lawsuit.[2] McCormick-Morgan Inc. v. Teledyne Industries, Inc., 134 F.R.D. 275, 287 (N.D. Cal.), rev'd on other grounds, 765 F. Supp. 611 (N.D. Cal. 1991). In addition to the extra cost, when lawyers craft responses they will necessarily do so in a way that most minimizes jeopardy

---

[2]The deposition process is even more disruptive. The attorney normally reveals contentions in a more quiet and deliberate atmosphere, such as through the complaint, answer, or in a brief. A deposition is more free-wheeling and provides a greater chance for argumentative exchanges or touching on sensitive matters such as attorney-client confidences, work product or agency deliberations which need not be revealed in order to discover a party's contentions. See United States v. Duke Energy Corp., 208 F.R.D. 553 (M.D.N.C. 2002); United States v. Taylor, 166 F.R.D. 356, 362 n.7 (M.D.N.C. 1996). Nevertheless, the Court does not wish to be understood as holding that such depositions may never be taken, but notes that most courts at least initially favor interrogatories. Exxon Research and Engineering Co. v. United States, 44 Fed. Cl. 597, 52 U.S.P.Q.2d 1359 (1999).

to their client and, therefore, contention discovery may yield little additional useful information.  <u>Id</u>.  Consequently, when the facts, evidence, and law are relatively straightforward such as in a simple traffic accident case, the need for contention discovery may be outweighed by the burdens of contention interrogatories, much less contention depositions of attorneys.  <u>Id</u>.  On the other hand, when a case involves complicated technical issues such as may arise in patent litigation, contention interrogatories may be useful.  <u>Id</u>.

The instant case lies somewhere between the two.  The necessity for contention interrogatories seemingly arises in government litigation because the government is often making policy through an enforcement action and not just relying on past decisions.  Thus, in the instant case, plaintiff perceives that the government, for policy reasons, altered its position when it decided to go after LILO's such as plaintiff's.  From plaintiff BB&T's viewpoint, the government's defense seems like a moving target and it would like to have the government commit itself to a particular position and explain its reasons.

With this last proposition, the government does not disagree, but argues that the real issue concerns the appropriate time and manner for such revelations.  The government asserts that it has been busy during discovery trying to learn facts and until it has a sufficient, comprehensive view of the facts, it will not be able to provide a final opinion concerning its contentions.  It continues that its earlier answers to the contention interrogatories at least provided the broad outlines of its defense.  However, the Fed. R.

-7-

Civ. P. 26(a)(2) report of its expert witness to be served on February 15, 2006 will allegedly contain a complete statement of the expert's opinion concerning the defense, the basis and reasons for that opinion, and the data and information on which the expert relied. At that time, defendant contends BB&T will have full knowledge of the facts and legal theory of the government's defense.

The Court agrees with defendant that when there is an expert report which will touch on the very contentions at issue, the Court should normally delay contention discovery until after the expert reports have been served, which may then render moot any further contention discovery. See <u>United States v. Duke Energy Corp.</u>, 208 F.R.D. at 558 (contention discovery not delayed when party seeking protective order did not show that such testimony would involve expert testimony). Even in a case not involving expert witnesses, contention interrogatories should normally be conducted at the end of discovery. <u>McCormick-Morgan, Inc. v. Teledyne Industries, Inc.</u>, 134 F.R.D. 286-287. Thus, an additional reason to quash the depositions notices is that they are premature.

The final reason for quashing the "contention depositions" is that it is not clear that they are necessary. A court may be well advised to examine whether contention discovery is truly necessary in any particular case. As the United States points out, contention discovery often requires a party to, in essence, prepare a trial brief at an earlier time in the litigation process than normally occurs. Without some specific reason to require such an acceleration, the Court may well deem the burden to outweigh the

-8-

benefit. In the ordinary case, the complaint, answer, disclosures, and discovery will provide sufficient information about a party's position until such time as the filing of the dispositive motions or trial briefs. In other cases, contention discovery may be necessary to avoid surprises at trial. <u>United States v. Duke Energy Corp.</u>, 208 F.R.D. 553. Courts may wish to confine contention discovery to those cases where there is a compelling, specific need for the information prior to the filing of dispositive motions in order to keep litigation costs down.

In the instant case, the government has not objected to contention discovery in general, only the scheduled contention depositions. It does request that the Court delay any consideration of the need for further consideration of contention discovery until after the February 15, 2006 expert disclosure is made. While the Court is not sure why further contention discovery is necessary in this case, because the parties appear to be willing to negotiate the issue, the Court will direct that they continue the process.

In summation, the Court finds that defendant United States' motion to quash the deposition of its in-house counsel is justified for several reasons. First, the Court finds the request for contention discovery depositions to be premature in that plaintiff has not first sought to obtain more specific answers to its June 2005 contention interrogatories. Second, plaintiff has sought to name specific individuals to provide contention discovery depositions, as opposed to permitting the party itself to name the individual or individuals to provide such answers. Third, the Court

finds that contention discovery in this case is premature until after defendant provides its expert's report on February 15, 2006. Finally, while it is not clear that contention discovery is necessary prior to the filing of briefs, the parties should continue the process of negotiating a resolution to the controversy. After defendant provides the expert witness report, the parties should discuss whether the contention interrogatories need to be supplemented.

**IT IS THEREFORE ORDERED** that defendant's motion for a protective order barring the depositions of three Internal Revenue Service attorneys (docket no. 26) be, and the same hereby is, granted on the terms stated in the body of this Order.

/s/ Russell A. Eliason
United States Magistrate Judge

February 2, 2006

-10-